USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ISRAEL FELICIANO                                             :
                                                            :
                                    Petitioner,              :
                                                            :           1:18-cv-9591-GHW
                    -against-                                :
                                                            :           MEMORANDUM OPINION
WILLIAM LEE, Superintendent,                                 :                AND ORDER
                                                            :
                                    Respondent.              :
--------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

In November 2010, Petitioner Israel Feliciano was convicted of two counts of murder in the 2nd Degree, in violation of New York Penal Law § 125.25. Petition for a Writ of Habeas Corpus ("Pet."), Dkt No. 2, at 2. He was sentenced to concurrent terms of twenty-five years to life. Trial Transcript 10/14, 10/15, 10/18-10/21, 11/10 ("Tr. 3"), Dkt No. 20-5, at 322.

Feliciano, proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Feliciano's claims fall into two buckets. First, Feliciano argues that his trial was fundamentally unfair. Pet. at 7-8. And second, he argues that the police obtained his statements in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 8. Feliciano's claims are time-barred, his conviction did not rest on an unreasonable application of federal law, and he has not met his burden to show that the trial court's factual finding that he waived his *Miranda* rights was incorrect. For those reasons, his petition for a writ of habeas corpus is DENIED.

# I. BACKGROUND

## A. Facts Giving Rise to Petitioner's Conviction

George Orfanos; his wife, Anastacia Orfanos; his son, Anastassios Orfanos; and his mother, Maria Orfanos, lived in the Bronx in New York City.  Trial Transcript 10/4, 10/5 ("Tr. 1"), Dkt No. 20-3, at 117-18.  On November 2, 1992, Anastassios and George returned home from a pizza restaurant that George managed late in the evening.  *Id.* at 120.  As Anastassios opened the door, three men pushed into their home.  Two wore masks.  Trial Transcript 10/5, 10/6, 10/7, 10/12 ("Tr. 2"), Dkt No. 20-4, at 276.  As the three men entered the room, they pushed the Orfanos family to the ground and beat them before ransacking the apartment.  *Id.* at 276-79.

The three men told the Orfanos family that they were looking for money.  *Id.* at 282.  When the family told them they had none, the invaders continued to beat the Orfanos family and threatened to kill them.  Tr. 1 at 145.  The invaders searched for about half an hour, and then shot George in the head before leaving with about two hundred dollars.  *Id.* at 129, 146-47.  He died a few days later.  *Id.* at 42.

Feliciano was not implicated in the murder until over a decade later.  In 2006, Detective Daniel Perruza matched Feliciano's fingerprints to a fingerprint left at the Orfanos residence.  Tr. 2 at 393, 398, 401.  Detective Perruza notified Detective Dennis Kruse, who had been assigned to investigate George's homicide.  *Id.* at 207.  Detective Kruse met with Feliciano.  *Id.* at 207-208.  During their first meeting, Detective Kruse spoke with Feliciano about his work history and his current employment.  *Id.* at 208.

In 2008, Detective Kruse traveled to Sumpter, South Carolina—where Feliciano then resided—to interview Feliciano.  *Id.* at 211.  Detective Kruse brought Feliciano to the police precinct.  *Id.* at 212.  And before conducting the interview, Detective Kruse advised Feliciano of his *Miranda* rights, orally and in a document that Feliciano signed.  *Id.* at 212-14.  Detective Kruse then

showed Feliciano pictures of the apartment where the murder took place and pictures of George. *Id.* at 216. At first, Feliciano said that he did not recognize the pictures. *Id.* at 216-17. But after Detective Kruse told Feliciano that his fingerprint had been found at the crime scene, his story changed. *Id.* at 217.

Feliciano confessed that the crime "was just supposed to be a robbery." *Id.* at 217. He stated that he "knew this would come back" to him, and that he "only went in to get money." *Id.* at 221-22. Feliciano identified his brother-in-law as one of the other invaders, *id.* at 222, but insisted that he had left the building before George was shot. *Id.* at 225. After his confession, Feliciano was taken into custody. *Id.*

**B. Trial**

During trial, Feliciano admitted to searching the apartment for money, Tr. 2 at 429, and tearing up the bedroom and closets, *id.* at 503-04, but he reiterated that he "ran out of the apartment" before George was shot. *Id.* at 431. Feliciano also argued that Detective Kruse questioned him "before the *Miranda* [warnings] were given[,]" and after he requested to speak with an attorney. *Id.* at 438. Feliciano also said that he had "[n]ever been in trouble," with the law before. *Id.* at 516. Because of that statement, the prosecution argued that Feliciano had "violated the ruling" not to discuss his prior arrests for possession of cocaine and marijuana and opened the door to the introduction of evidence about them under *People v. Sandoval*, 34 N.Y.2d 371, 376 (1974). Tr. 2 at 516-17. Although Feliciano's counsel argued that "there was [not] a sufficient opening [of] the door in this case[,]" *id.* at 519, the court ruled that "[h]e opened the door by saying he's never been in trouble and he had, in fact, been in trouble." *Id.* at 520. This permitted the prosecution to question Feliciano about his previous convictions and experience with *Miranda*.

The jury found Feliciano guilty of two counts of murder in the second degree.  Trial Transcript 10/14, 10/15, 10/18-21, 11/10 ("Tr. 3"), Dkt No. 20-5, at 874-76.  He was sentenced to twenty-five years to life on each count with the terms to run concurrently.

### C. Direct Appeal

With the assistance of counsel, Feliciano filed a brief on direct appeal in the Appellate Division seeking to overturn his conviction.  On direct appeal, Feliciano argued that:  (1) the trial court committed a reversible error by modifying its *Sandoval* ruling during appellant's cross-examination, thus enabling the prosecutor to unfairly accuse him of intentionally lying to jurors; (2) he was denied a fair trial by improper tactics of the prosecutor that undermined his credibility and skewed the jury's consideration of his affirmative defense to felony murder; and (3) his sentence of twenty-three years to life was unnecessarily harsh and should be reduced in the interest of justice.  Brief for Defendant-Appellant, Dkt No. 16, Ex. 2 at 2.  In a supplemental brief, filed *pro se*, Feliciano also argued that:  (1) the court should have suppressed his confession because it was obtained in violation of his *Miranda* rights; and (2) the trial court violated New York Criminal Procedure Law § 310.30 when it did not respond to jury note #12 in compliance with *People v. O'Rama*, 78 N.Y.2d 270 (1991).  Supplemental Brief, Dkt No. 16, Ex. 3 at 2.  The State opposed both motions.  *See* Respondent's Brief, Dkt No. 16, Ex. 4.

The Appellate Division unanimously affirmed the conviction.  *People v. Feliciano*, 18 N.Y.S.3d 864 (1st Dep't 2015).  The Appellate Division first rejected Feliciano's argument that the trial court erred by modifying its *Sandoval* ruling.  *Id.* at 864 (holding that when "defendant volunteered that he had "[n]ever been in trouble," this opened the door to a modification of the court's *Sandoval* ruling[,]" and "the modified *Sandoval* ruling was narrowly limited").  Second, the Appellate Division determined that the

> [d]efendant's challenges to the prosecutor's summation are unpreserved, and we decline to review them in the interest of justice.  As an alternative holding, we find that

the summation did not deprive defendant of a fair trial.  The challenged remarks generally constituted permissible comment on the evidence, and the prosecutor's improper references to defendant as a "liar" were not so egregious as to require reversal.

*Id.*  Finally, the Appellate Division rejected Feliciano's remaining claims.  *Id.*  The New York Court of Appeals denied leave to appeal on July 28, 2016.  *People v. Feliciano*, 27 N.Y.3d 1150 (N.Y. 2016).

### D. State Collateral Proceedings

In February 2017, Feliciano filed a motion *pro se* to vacate judgment under New York Criminal Procedure § 440.10(1)(f) and (h) in the New York Supreme Court in Bronx County.  *See* Affidavit in Support for Motion to Vacate Judgment, Dkt No. 16-5.  Feliciano argued that:  (1) the trial court erred in its response to a jury note; and (2) the court improperly allowed into evidence fingerprints collected at the crime scene.  *Id.* at 2.  The New York Supreme Court denied the motion in October 2017.  *See* Decision & Order, Dkt No. 16-8.

### E. Procedural History

Feliciano filed this petition in October 2018.  Respondents opposed the petition, Dkt Nos. 16-20, and Feliciano replied, Dkt No. 25.

## II. LEGAL STANDARD

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (explaining that "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court").

To obtain relief, a petitioner must meet four requirements.  The petitioner first must apply within the one-year statute of limitations.  *See* 28 U.S.C. § 2244(d)(1).  If the petitioner's claims are timely, she must meet three more requirements:  "(1) exhaustion; (2) lack of a procedural bar; and

(3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')." *Burwell v. Lafflin*, No. 1:14-cv-3070 (GHW), 2016 WL 8677292, at *3 (S.D.N.Y. Aug. 5, 2016) (quoting *Todd v. Dolce*, No. 13-cv-5421 (NGG), 2015 WL 4488455, at *4 (E.D.N.Y. July 22, 2015)).

Feliciano is proceeding *pro se.* The Court thus "construe[s] his pro se submissions liberally and interpret[s] them to raise the strongest arguments they suggest." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) (quotation omitted); *see also Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("If a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." (citation omitted)).

### A. Statute of Limitations

AEDPA provides that

[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]

28 U.S.C. § 2244(d)(1).  And "the time during which a properly filed application for State post-conviction or other collateral review . . . is pending" is excluded from the one-year limitations period.  *Id.* § 2244(d)(2).

Generally, a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  Thus, a conviction becomes final 90 days after the final determination by the

state court "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]." *Id.* at 150 (quotation omitted).

There is an exception to this general rule for "State action in violation of the Constitution or laws of the United States" that creates an "impediment to filing an application[.]" 28 U.S.C. § 2244(d)(1)(B). "[T]o invoke [§] 2244(d)(1)(B), a petitioner must show that (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Whitted v. Martuscello*, No. 11-cv-1222 (VB), 2014 WL 1345920, at *4 (S.D.N.Y. Apr. 3, 2014) (quoting *Calderola v. Capra*, No. 12-cv-6133 (ER), 2013 WL 5328197, at *15 (S.D.N.Y. Sept. 6, 2013)).

"[I]n rare and exceptional circumstances," a petitioner may also qualify for equitable tolling of the statute of limitations. *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quotation omitted). A petitioner is entitled to equitable tolling only if he shows that "extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Id.* at 159 (quotations omitted). In the Second Circuit, extraordinary circumstances have been found to exist "where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary," or "where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers." *Id.* at 159-60.

### B. Exhaustion

"A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). The exhaustion requirement "derives ultimately from notions of comity between the federal and State judicial systems," and is "codified by statute at 28 U.S.C. § 2254(b) and (c)." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999). Those sections provide:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)

       (i) there is an absence of available State corrective process; or

       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

"Exhaustion requires that the prisoner 'fairly present' the federal claim 'in each appropriate state court (including a state supreme court with powers of discretionary review).'" *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). "A petitioner may satisfy the fair presentation requirement by: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)). "If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." *Id.* (brackets and quotation omitted).

**C. Procedural Bar**

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (brackets and quotation omitted); *see also Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) ("Absent a showing of cause and prejudice, it is

settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas.") (citing *Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991)). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009). But "federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." *Coleman*, 501 U.S. at 736.

The Second Circuit has "repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion." *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001). "Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (citation omitted).

"Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006)). "[T]he cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Id.* Alternatively, "futility may constitute cause where prior state case law has consistently rejected a particular constitutional claim." *Id.* at 111-12 (quotations omitted). "The 'prejudice' requirement is met by establishing" that an "error . . . resulted in 'substantial disadvantage, infecting the entire trial with error of constitutional dimensions.'" *Id.* at 112 (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)) (brackets omitted).

### D. Standard of Review

The petitioner must also "show that the resolutions of the merits of their claims in the state courts were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that they were 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Mannix v. Phillips*, 619 F.3d 187, 195 (2d Cir. 2010) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (brackets omitted).  A decision is contrary to Supreme Court precedent if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)) (brackets omitted).  "In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme Court's] decisions.'" *Howes v. Fields*, 565 U.S. 499, 505 (2012) (quoting *Williams*, 529 U.S. at 412).

"An 'unreasonable application' occurs when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Alvarez v. Ercole,* 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Williams*, 529 U.S. at 413) (brackets omitted).  "The Supreme Court has explained that an 'unreasonable application' is one that is 'more than incorrect or erroneous'; it must be 'objectively unreasonable.'" *Rivas v. Fischer*, 780 F.3d 529, 546 (2d Cir. 2015) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)).  "In other words, the state court's decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Contreras v. Artus*, 778 F.3d 97, 106 (2d Cir. 2015) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011)) (alterations omitted).

State court factual determinations are also entitled to deference.  "[A] determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "[A] 'state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

## III. DISCUSSION

Felicano has not shown that he is entitled to relief.  In his Petition, Feliciano argues that he was denied a fundamentally fair trial and that the police should have ceased questioning him. Feliciano raises four specific claims for relief:  (1) the trial court erred "by modifying its *Sandoval* ruling[,]" (2) the prosecutor made improper statements during his summation during Feliciano's trial, (3) the trial court erred when "it failed to create a record of its response to Jury Note #12," and (4) the police obtained his statements in violation of his rights under *Miranda*.  Pet. at 3, 8.

Feliciano's claims are untimely.  They also fail on the merits.  Feliciano has not shown that any of the trial court's determinations conflicted with or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Nor has he shown by clear and convincing evidence that the trial court's factual finding that he waived his *Miranda* rights was incorrect.

### A. Statute of Limitations

Feliciano's claims are barred by the statute of limitations.  The Appellate Division unanimously affirmed Feliciano's conviction in November 2015.  *See Feliciano*, 18 N.Y.S.3d at 864. The New York Court of Appeals denied Feliciano leave to appeal on July 28, 2016.  *See Feliciano*, 27 N.Y.3d at 1150.  Feliciano then had ninety days to petition the United States Supreme Court for

certiorari.  After that ninety-day period expired on October 27, 2016, the statute of limitations began to run.

On February 17, 2017—139 days later—Feliciano moved for a new trial in the New York Supreme Court.  *See* Dkt No. 16-5.  As a "properly filed application for State post-conviction . . . review[,]" Feliciano's new motion tolled the statute of limitations.  28 U.S.C. § 2244(d)(2).  Because 139 of the 365 days for Feliciano to file a federal habeas petition had elapsed, 226 days remained within which Feliciano could file a timely habeas petition in federal court.  The New York Supreme Court denied Feliciano's motion and the Appellate Division denied "permission to appeal from the order of the Supreme Court, Bronx County" on January 11, 2018.  Dkt No. 16-9 at 1.  So on that date, the statute of limitations began to run again.  Thus, the statute limitations expired, 226 days from January 11, 2018 on August 25, 2018.[1]  Feliciano filed the petition that began this case on October 11, 2018, after the statute of limitations had expired.  *See* Pet. at 2.  Thus, his claims are untimely.

Feliciano argues that his delay should be excused, but his arguments are unconvincing.  He argues that his petition "was completed in June[] 2018" but that he could not file it because of the "unavailability of a properly working printer in the law library[.]"  Pet. at 15.  In a letter to the Court filed at the same time as his petition, Feliciano repeats the claim that his petition was untimely because the printer in the law library was broken.  Feliciano Letter ("Letter"), Dkt No. 3, at 1.[2]

To the extent that Feliciano intended to argue that the broken printer tolled the statute of limitations under 28 U.S.C. § 2244(d)(1)(B), that argument is unconvincing.  Recall that "to invoke

---

[1] Respondent's opposition says that February 17, 2017 is 112 days after October 27, 2016.  Even adopting that construction, the statute of limitations expired on September 21, 2018.  Because Feliciano filed his petition in this case on October 11, 2018, this difference is immaterial.

[2] Feliciano also argues that "his ongoing legal work did not accompany him" when he was "transferred to a new facility in March[] 2018[.]"  Pet. at 15.  While this could be construed as an argument that Feliciano's petition was delayed by the transfer, Feliciano argues that he was still able to complete his petition on time.  *See id.* ("I did not need the amount of time afforded by [§] 2244, and got this petition printed and in the mail as soon as possible.").  In any event, even if Feliciano had argued that the transfer caused the delay, that argument would not affect the Court's conclusion.

[§] 2244(d)(1)(B), a petitioner must show that (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Whitted*, 2014 WL 1345920, at *4 (quotation omitted).  In the first place, Respondent has presented some evidence that the printer in the law library was not, in fact, broken for almost five months.  Declaration of Cynthia A. Carlson in Opposition to Petition for Habeus Corpus ("Carlson Dec."), Dkt. No. 16, ¶ 11 n.6.[3]  Respondent has also presented evidence that "whenever the law library printer was offline, the facility's staff printed the inmate's documents using a different printer either in the General Library or at the CO's desk."  *Id.*  Based on that evidence, the Court finds incredible Feliciano's claim that he was unable to print his petition for five months.  And even if Feliciano were indeed unable to print his petition for five months—and this was, as he claims, the only impediment to him filing his petition timely—he could have copied his petition by hand.  Feliciano admits that he knew about the deadline for the statute of limitations.[4]  Thus, although it may have been inconvenient to recopy the petition by hand, that does not mean that the alleged failure to fix the printer was state action that prevented Feliciano from filing his petition timely.  For those reasons, New York did not "imped[e]" Feliciano from filing his petition through an "action in violation of the Constitution or laws of the United States[.]"[5]  28 U.S.C. § 2244(d)(1)(B).

For much the same reasons, Feliciano is not entitled to equitable tolling.  Feliciano's excuses outlined above do not qualify as "rare and exceptional circumstances" that would justify equitable tolling.  *Doe*, 391 F.3d at 159.  Again, the Court finds incredible Feliciano's claim that the printer in

---

[3] *See id.* ("In a conversation on April 9, 2019, Eastern Correctional Facility Inmate Records Coordinator Stacey Fredenburgh confirmed that there is one printer in the Law Library, that it was not working on March 16, 2018, but it was subsequently fixed, that it was not working on April 16, 2018, but by April 30th, it was working, and that it was not working on September 12, 2018, but by September 24, 2018, it was working.  Additionally, Ms. Fredenburgh confirmed that petitioner never filed a grievance about the law library printer[.]").

[4] Indeed, Feliciano says that he "request[ed] an extension of time" to file his habeas petition, but there is no record of this request.  Letter at 1.

[5] The Court is also skeptical of the premise of this argument that failing to provide a printer in the law library violated Feliciano's constitutional or statutory rights, as required for a petitioner to invoke § 2244(d)(1)(B).

the law library wasn't working for five months.  And even if the printer was broken, that was not an "extraordinary circumstance" that prevented him from filing his petition on time.  *Id.*  Finally, Feliciano has not shown that he acted with "reasonable diligence" because he could have recopied his petition by hand.

### B. Merits

Feliciano's claims also fail on the merits.  He has failed to show that New York courts' "resolution[] of the merits of [his] claims in the state courts were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that" the resolution was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Mannix*, 619 F.3d at 195 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (brackets omitted).

### 1. Modification of the *Sandoval* Ruling

Feliciano's *Sandoval* argument does not meet AEDPA's deferential standard of review. Under *Sandoval*, the court must make an advanced ruling on the scope of cross-examination about "prior specific criminal, vicious or immoral conduct" if the defendant decides to testify.  34 N.Y.2d at 376.  At first, the trial court limited Feliciano's cross examination to exclude any reference to his prior convictions.  But Feliciano testified that he had "never been in trouble before." Tr. 2 at 520. Based on that testimony, the trial court determined that Feliciano had "opened the door by saying he's never been in trouble and he had, in fact, been in trouble." *Id.*  On appeal, the Appellate Division determined that "[t]he court correctly determined that when, on cross-examination, defendant volunteered that he had '[n]ever been in trouble,' this opened the door to a modification of the court's *Sandoval* ruling." *Feliciano*, 18 N.Y.S.3d at 864 (citation omitted).  The Appellate Division found that "the modified *Sandoval* ruling was narrowly limited[,]" and that "the jury only learned that defendant had some unspecified, and apparently minor, conflict with the law." *Id.*

14

Feliciano has not met AEDPA's deferential standard of review.  A "*Sandoval* ruling" is "a matter of 'state law and not subject to habeas review' unless the petitioner can 'show that the erroneous evidentiary ruling was so pervasive as to have denied him a fundamentally fair trial, or so extremely unfair that its admission violates fundamental conceptions of justice.'"  *Lewis v. New York*, No. 14-cv-3906 (ENV), 2017 WL 5591624, at *8 (E.D.N.Y. Nov. 17, 2017) (quoting *Ward v. Lee*, No. 11-cv-1068 (ENV), 2014 WL 2465607, at *3 (E.D.N.Y. May 30, 2014)).  "Unless the erroneously admitted evidence was the fulcrum that provided the basis for conviction or removed a reasonable doubt that would otherwise be present, there is no constitutional violation that would warrant federal habeas relief."  *Id.*  This is an especially "heavy burden" because "trial courts have broad discretion in their *Sandoval* determinations."  *Cooper v. Bellnier*, No. 09-cv-2353 (SLT) (JMA), 2010 WL 8551300, at *11 (E.D.N.Y. Mar. 31, 2010), *report and recommendation adopted*, No. 09-cv-2353 (SLT) (JMA), 2012 WL 1237647 (E.D.N.Y. Apr. 12, 2012) (citing *Simmons v. Ross*, 965 F. Supp. 473, 480 (S.D.N.Y.1997)).

Feliciano has not come close to carrying that heavy burden.  He has not shown that the trial court's ruling rendered his trial unfair, much less fundamentally unfair.  And he has not established that the trial court's *Sandoval* ruling violated any fundamental conception of justice.  So Feliciano is not entitled to habeas relief on this ground.

### 2. Statements Made by the Prosecutor

Feliciano is not entitled to relief based on the comments the prosecutor made during his summation.  On direct appeal, the First Department held that the

> Defendant's challenges to the prosecutor's summation are unpreserved, and we decline to review them in the interest of justice.  As an alternative holding, we find that the summation did not deprive defendant of a fair trial.  The challenged remarks generally constituted permissible comment on the evidence, and the prosecutor's improper reference to defendant as a "liar" [was] not so egregious as to require reversal.

*Feliciano*, 18 N.Y.S.3d at 864 (citations omitted).

Feliciano's claim is procedurally barred.  The Appellate Division held that his challenges were "unpreserved" and so "decline[d] to review them[.]"  *Id.*  A state court's decision to decline review because a claim is unpreserved is an independent and adequate state ground that bars habeas review.  *See Wainwright v. Sykes*, 433 US 72, 88-90 (1977); *see also Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citing *Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991)).  This is a procedural bar to relief on Feliciano's habeas claim.

Feliciano's claim also fails on the merits because he has again failed to show that the New York courts' decisions were "contrary to[] or involved an unreasonable application of" any Supreme Court caselaw.  28 U.S.C. § 2254(d)(1).  The Supreme Court has held that "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also United States v. Rivera*, 22 F3d 430, 437 (2d Cir. 1994) ("A prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice.").  The Court agrees with the First Department's conclusion that it was improper for the prosecutor to call Feliciano a "liar."  The conclusion that this stray comment did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," *Darden*, 477 U.S. at 181, was not an "unreasonable application of" *Darden* and subsequent Supreme Court caselaw.  28 U.S.C. § 2254(d)(1).  Thus, the Court cannot grant habeas relief on this ground.

### 3. Jury Note #12

Feliciano has likewise failed to show that he is entitled to habeas relief based on the trial court's failure to reconvene the parties in response to Jury Note #12.  Concurrent with Feliciano's

16

appeal before the Appellate Division, he filed a supplemental brief contending that the trial court

violated New York law by sending an "exhibit into the jury room without reconvening the parties,

reading [the parties] the Jury Note, and allowing them to respond." Dkt No 16-8, at 41. Feliciano

argues that the trial court's failure to reconvene the parties violated New York Criminal Procedure

Law § 310.30.[6]  The New York Supreme Court held that the claim was "procedurally barred because

it was raised on defendant's direct appeal and determined by the First Department." *Id.* And "the

procedures set forth in CPL 310.30 were not required because the Jury Note 'only necessitated the

ministerial action[] of sending [an] exhibit[] into the jury room.'"  *Id.* at 42 (quoting *People v. Ziegler*,

911 N.Y.S.2d 331, 333 (1st Dep't 2010)).

The Court cannot grant relief based on this state law argument.  *See Encarnacion-Cross v.*

*McAuliffe*, No. 17-cv-3603 (PAE) (GWG), 2018 WL 1913835, at *7 (S.D.N.Y. Apr. 23, 2018), *report*

*and recommendation adopted*, No. 17-cv-3603 (PAE) (GWG), 2018 WL 3384438 (S.D.N.Y. July 11,

2018) ("[A] claim premised on a violation of New York Criminal Procedure Law Section 310.30

does not allege a violation of a federally protected right." (quoting *Cornado v. Bellnier*, No. 10-cv-5265

(RA) (HBP), 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012), *report and recommendation adopted*, No.

10-cv-5265 (RA), 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012)).

Nor was the trial court's behavior as to Jury Note #12 "contrary to, or . . . an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States[.]"  28 U.S.C. § 2254(d)(1).  "The Sixth Amendment and Rule 43 of the Federal Rules of

Criminal Procedure require that ordinarily a message from the jury be answered in open court and

---

[6] That provision states: "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper."

that counsel be given the opportunity to be heard before the trial judge responds to the jury's questions." *United States v. Henry*, 325 F.3d 93, 105 (2d Cir. 2003) (quoting *United States v. Robinson*, 560 F.2d 507, 516 (2d Cir. 1977) (en banc)).  The Second Circuit's decision in *Robinson* rested on the Supreme Court's decision in *Rogers v. United States*, 422 U.S. 35 (1975).  In *Rogers*, the jury sent a note "inquiring whether the court would 'accept the Verdict—Guilty as charged with extreme mercy of the Court.'"  *Id.* at 36 (some quotation marks omitted).  The Supreme Court held that "the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded."  *Id.* at 39.  *Rogers* cited the Supreme Court's prior decision in *Shields v. United States*, 273 U.S. 583 (1927).  In *Shields*, "[t]he trial judge had replied to a written communication from the jury, indicating its inability to agree as to the guilt or innocence of the defendant, by sending a written direction that it must find the defendant 'guilty or not guilty.'"  *Rogers*, 422 U.S. at 39.

The state court's actions here were not "contrary to, or . . . an unreasonable application of" any "clear[]" holding of *Rogers* or *Shields*.  28 U.S.C. § 2254(d)(1).  Even assuming that Feliciano had a constitutional right to have the jury note read aloud in open court,[7] there is no Supreme Court case establishing Feliciano's right to respond to a jury note in circumstances like those presented here.  As noted above, the New York court reasoned that the jury note required only the ministerial action of sending an exhibit back to the jury room.  That decision did not clearly contravene the Supreme Court's holdings in *Rogers* or *Shields*.

---

[7] Some courts have noted that *Rogers* and *Shields* appeared to "rest[] solely on" the federal rules rather than the Constitution.  *Silva v. Capra*, No. 15-cv-9032 (GHW) (SN), 2016 WL 5793977, at *8 (S.D.N.Y. Aug. 30, 2016), *report and recommendation adopted*, No. 15-cv-9032 (GHW), 2016 WL 5719797 (S.D.N.Y. Sept. 29, 2016).  If so, these decisions "cannot form the basis of a § 2254 petition" because they are "federal procedural grounds[.]"  *Id.* (citing *Early v. Packer*, 537 U.S. 3, 10 (2002)).  But the Second Circuit's decision in *Robinson*, which interpreted *Rogers*, held that "[t]he Sixth Amendment *and* Rule 43 of the Federal Rules of Criminal Procedure require" jury notes be read aloud in open court.  *Robinson*, 560 F.2d at 516 (emphasis added).  The most natural interpretation of that line is that both the Sixth Amendment and Rule 43 independently require that a jury note be read in open Court.  The Court assumes without deciding that defendants have a constitutional right to respond to jury notes in open court in at least some circumstances because even if they do, Feliciano is not entitled to habeas relief.

Feliciano has also failed to show that he was prejudiced by the trial court's failure to reconvene the parties in response to Jury Note #12.  "[A]ny violation of" a defendant's "Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note"—assuming a defendant has such a right—"is subject to harmless error review."  *Silva*, 2016 WL 5793977, at *9 (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994); *United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969)).  Even if the trial court erred by not reconvening the parties and permitting Feliciano's counsel to respond to the jury's request for an exhibit, any such error was harmless.  *See United States v. Ballistrea*, 101 F.3d 827, 837 (2d Cir. 1996) (holding that an error in failing to follow the correct procedures for a jury note "largely concerned administrative matters" and was therefore harmless).  Thus, Feliciano is not entitled to habeas relief on this ground.

### 4. Voluntariness of Feliciano's Statements and *Miranda*

Feliciano is not entitled to habeas relief on his claim that his statements were obtained in violation of *Miranda* because he has not shown that the state courts' finding that he waived his *Miranda* rights was unreasonable.  In his petition, Feliciano argues that "questioning should have ceased as soon as the defendant asked to speak with an attorney" and "*Miranda* . . . prevents any further police-initiated interrogation outside the presence of counsel."  Pet. at 11.  Under *Miranda*, statements that result from a suspect's custodial interrogation may not be used by the prosecution "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. at 444.  Thus, the police must give suspects *Miranda* warnings when they are subjected to either express questioning or its functional equivalent.  *Rosa v. McCray*, 396 F.3d 210, 220-21 (2d Cir. 2005).  "If [a defendant] requests counsel, 'the interrogation must cease until an attorney is present.'"  *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (quoting *Miranda*, 384 U.S. at 474).  But a suspect may waive his *Miranda* rights as long as the waiver is "the product of free and deliberate choice rather than intimidation coercion, or deception," and was "made with full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986).

Here, the trial court found that "Detective Kruse clearly informed the defendant of his *Miranda* rights[,]" and that "the defendant[] obviously waived his *Miranda* rights when after being fully apprised of those rights by Detective Kruse, he continued to answer yes when he understood them and answered questions afterwards." Voir Dire 9/27/10, 9/28/10, Dkt No. 20-1, at 10. The court also concluded that "the defendant's belated allegations that he requested counsel by stating ['']I think I need a lawyer['] is incredible." *Id.* The court pointed to his prior "representation [by] a lawyer in a prior criminal proceeding[,]" the lack of "testimony that corroborates any version of his alleged requests for counsel[,]" and the fact that "defendant initialed after each question of his *Miranda* warnings and on the *Miranda* sheet." *Id.* at 10-11.

Thus, the state court determined that Feliciano knowingly and intelligently waived his *Miranda* rights and that his testimony that he had asked for a lawyer was not credible. Those are factual determinations, so they are "presumed to be correct" and Feliciano bears the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As Feliciano has not offered evidence sufficient to meet that burden, he has no right to relief.

## IV. CONCLUSION

Because Feliciano's petition is untimely and his claims fail on the merits, his petition for a writ of habeas corpus is denied. Feliciano has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  August 26, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge

20